Filed 3/25/15  Donshen Testile v. Studio CL CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| DONSHEN TEXTILE (HOLDINGS) LTD., | B253970 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC469979) |
| v. | |
| STUDIO CL CORPORATION et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Mark Mooney, Judge.  Affirmed.

Hallstrom, Klein & Ward, Grant J. Hallstrom, Paul J. Kurtzhall for Plaintiff and Appellant.

Schwimer Weinstein, Michael E. Schwimer, Zev Weinstein for Defendants and Respondents.

_____

Donshen Textile (Holdings) Ltd. obtained a judgment against Leonard Rabinowitz and levied on his real property located in Los Angeles County, including his home, and sought to have the home sold in partial satisfaction of the judgment. At an order to show cause hearing, Donshen Textile argued the home was the community property of Leonard and his wife, Kristen,[1] its value exceeded all encumbrances, and it should therefore be ordered sold. Leonard opposed the application, arguing he owned no interest in the home because it was Kristen's separate property, and even if he did own some portion of it, the value of his interest was less than the combined encumbrances and exemptions, and therefore it could not be ordered sold.

The trial court denied Donshen Textile's application on the ground that Donshen failed to establish the home was community property or to prove Leonard's interest exceeded all encumbrances, liens and exemptions.

We affirm.

## BACKGROUND

In 2004, Kristen purchased a home on 10727 Wilshire Boulevard, in Los Angeles (the Wilshire property) using proceeds from the sale of her separate property as down payment. Leonard cosigned the purchase money loan and he and Kristen took title as joint tenants. In 2005, they transferred the property to the Kristen and Leonard Rabinowitz Revocable Trust, which they had created in 2000 and amended in 2004, and as to which they were both trustors and cotrustees.

The trust contained the following restriction on alienability of real property: "The signature of both Trustors shall be required to sell, purchase, mortgage, or otherwise encumber, pledge or create restrictions on any real estate held by the Trustee." The trust also provided, in section 2.1 (as amended in 2004), that "[u]pon revocation, community property shall be distributed to the Trustors and separate property shall be distributed to the Trustor who contributed it."

---

[1] We refer to Leonard and Kristen Rabinowitz by their first names for clarity only.

2

On May 30, 2013, Donshen Textile obtained a judgment against Leonard in the amount of $902,502.98. On August 23, 2013, pursuant to a Writ of Execution, the Los Angeles County Sheriff levied on all of Leonard's real property located in Los Angeles County, including the Wilshire property.

On August 28, 2013, Donshen Textile filed an ex parte motion for an order to sell the Wilshire property, contending the property was acquired during Leonard and Kristen's marriage and was therefore community property. Donshen Textile contended the value of the property was approximately $2,000,000, it was encumbered by two deeds of trust securing debts of $1,150,000 and $200,841, and it was subject to a $175,000 homestead exemption, leaving a net realizable value of $474,159.

Leonard opposed the motion on the grounds that the Wilshire property was Kristen's separate property, and therefore he had no interest in it, and even if he owned some interest its value would be less than the debt secured by the property plus his homestead exemption, and therefore would not be realized in any forced sale. In reply, Donshen Textile admitted Kristen and Leonard took ownership of the property as joint tenants in 2004 but argued they transmuted it to community property by transferring it to the trust in 2005.

After a hearing, the trial court found Donshen Textile failed to establish either that the Wilshire property was community property or that the value of any interest held by Leonard would be realized in a forced sale. It consequently discharged the OSC. Donshen Textile appealed.

## DISCUSSION

A court may order the sale of an interest in residential property to satisfy a judgment lien if the sale is likely to produce a bid that exceeds the amount of any homestead exemption plus all liens and encumbrances. (Code Civ. Proc., §§ 704.780, 704.800.)

It is undisputed that the Wilshire property had a fair market value of approximately $2,000,000 but secured two loans and was subject to a homestead exemption that added up to $1,525,841. It therefore had a net realizable value of

3

$474,159, and in the abstract could be ordered sold to wholly or partially satisfy a judgment creditor's lien. But the property could be sold to satisfy Donshen Textile's lien against Leonard only if it belonged to Leonard himself, either as his separate property or as community property, because although a community estate is liable for debt incurred by either spouse regardless of whether the other spouse is party to the debt or to a judgment for it (Fam. Code, § 910), a spouse owns no interest in the separate property of the other spouse (Fam. Code, § 752).

It is undisputed that Leonard and Kristen held title to the Wilshire property as joint tenants in 2004 before placing it in trust in 2005, and that property held in joint tenancy is separate property. (Civ. Code, § 683.) Donshen Textile contends the Wilshire property may nevertheless be sold because it was transmuted to community property when Leonard and Kristen transferred it to their family trust. We disagree.

Spouses may hold property as community or separate property. (Fam. Code, § 750.) All property acquired during marriage is presumed to be community property unless otherwise provided by statute. (Fam. Code, § 760.) Separate property of a married person includes property owned before marriage, acquired after marriage by gift or inheritance, or held in joint tenancy. (Fam. Code, §§ 750, 770.) Each spouse holds an equal interest in community property (Fam. Code, § 751), but neither owns an interest in the separate property of the other (Fam. Code, § 752). The community estate is liable for debt incurred by either spouse. (Fam. Code, § 910.)

Spouses may transmute separate property to community property by agreement or transfer. (Fam. Code, § 850.) For a transmutation to be valid, it must be "made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected." (Fam. Code, § 852.) An "express declaration" need not use the terms "transmutation," "community property," or "separate property," but it must "expressly state[] that the characterization or ownership of the property is being changed." (*Estate of MacDonald* (1990) 51 Cal.3d 262, 272-273 [no particular locution required].) For example, the language "I give to the account holder any interest I have in the funds deposited in this account," would suffice to

4

establish transmutation.  (*Id*. at p. 273.)  "The express declaration must unambiguously indicate a change in character or ownership of property.  [Citation.]  A party does not 'slip into a transmutation by accident.'  [Citation.]"  (*In re Marriage of Starkman* (2005) 129 Cal.App.4th 659, 664.)  Mere transfer of property into a revocable family trust does not transmute the character of the property.  (*Id.* at p. 665.)

Whether property is separate or community property is a question of law that is subject to de novo review when the facts are undisputed.  (*Diamond Benefits Life Ins. Co. v. Troll* (1998) 66 Cal.App.4th 1, 5.)  Whether a written instrument effects a transmutation is also subject to independent review.  (*In re Marriage of Starkman*, *supra*, 129 Cal.App.4th at p. 664 ["In deciding whether a transmutation has occurred, we interpret the written instruments independently, without resort to extrinsic evidence"].)

Donshen Textile argues that because the trust's restriction on alienability of trust property is effectively identical to a restriction on community property found in the Family Code, Leonard and Kristen impliedly agreed to transmute the Wilshire property to community property when they transferred it into the trust.  The argument is without merit.  Family Code section 852 provides that transmutation can occur only by express written declaration, not by implication.  No trust documents contain such a declaration.

The purpose of the Kristen and Leonard Rabinowitz Revocable Trust appears to be to provide for the orderly administration of the trustors' property in the event of their deaths.  To this end, the trust documents provide that in the event of one trustor's death, the trustee shall distribute a specified gift to the deceased trustor's family and distribute the remainder of the trust estate to the surviving trustor, who may opt to direct that the estate remain in trust.  Upon the second trustor's death, the trust estate is directed to be distributed to the trustors' families.  Nothing in the trust documents reflects an intent or agreement to transmute separate to community property.  For example, nothing states that property transferred to the trust "becomes" or "is changed into" the community property.

Section 2.2 of the trust declaration supports our interpretation.  It provides that upon revocation, community property would be distributed to both trustors but separate property would go only to the trustor who contributed it.  A reasonable inference from

5

this language is that community and separate property were intended to retain their characterization while held in trust.

We recognize that the trust provides that "[t]he signature of both Trustors shall be required to sell, purchase, mortgage, or otherwise encumber, pledge or create restrictions on any real estate held by the Trustee," and that this provision compares with subdivision (a) of Family Code section 1102, which provides that "both spouses . . . must join in executing any instrument by which . . . community real property or any interest therein is . . . sold, conveyed, or encumbered." But a coincidental similarity between trust property and community property, without more, is unremarkable and immaterial. Property becomes trust property by way of a deed transfer in favor of a trustee. The trustors dictate the terms under which the property will be held—the trust terms—and may at their option limit the trustee's power to retransfer the property. Such a limitation arises solely from the trustors' intent, not the Family Code, and applies irrespective of the separate or community nature of the property or any family relation between the parties.

In sum, nothing in the record suggests transfer of the Wilshire property to Leonard's and Kristen's revocable family trust was intended to effect a change in the separate character of the property. Donshen Textile therefore failed to establish the property as a whole was part of a community estate that would be liable for debts incurred by Leonard alone.

Donshen Textile made no attempt to establish the value of Leonard's separate interest in the Wilshire property and no attempt to establish the value of any partial community interest in it, e.g., an interest deriving from Leonard possibly having contributed to mortgage payments. (See *In re Marriage of Green* (2013) 56 Cal.4th 1130, 1142 ["'Where community funds are used to make payments on property purchased by one of the spouses before marriage "the rule developed through decisions in California gives to the community a pro tanto community property interest in such property in the ratio that the payments on the purchase price with community funds bear to the payments made with separate funds"'"].) Even if such interests exist, Donshen Textile failed to establish what their values might be, much less that they would have

6

exceeded $1,525,841, the sum of the exemption plus encumbrances.  Therefore, no sale of the property was permitted under Code of Civil Procedure sections 704.780 and 704.800.

**DISPOSITION**

The judgment is affirmed.  Respondents are to recover their costs on appeal.

NOT TO BE PUBLISHED.


CHANEY, Acting P. J.


We concur:


JOHNSON, J.


BENDIX, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.